U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

## UNITED STATES DISTRICT COURT
## DISTRICT OF VERMONT

2015 OCT -2  PM 1: 02

CLERK

BY_____
DEPUTY CLERK

| | |
|---|---|
| ROBERT TURNAU, MARGARET BALDWIN, CHUCK LACY, RANDY KRUGER, LINDA KRUGER, AMANDA MCKAY and all others similarly situated, )))))) | |
| Plaintiffs, ) | |
| v. ) | DOCKET NO.   5:15.cv-214 |
| VOLKSWAGEN AG, VOLKSWAGEN GROUP, and VOLKSWAGEN GROUP OF AMERICA, INC. , ))))) | |
| Defendants. | |

### COMPLAINT

Plaintiffs Robert Turnau, Margaret Baldwin, Chuck Lacy, Randy Kruger, Linda Kruger

and Amanda McKay, on behalf of themselves (collectively, the "Plaintiffs") and all others

similarly situated, for their Complaint against Defendants Volkswagen Aktiengesellschaft

("Volkswagen AG"), Volkswagen Group , and Volkswagen Group of America ("Volkswagen

America") state as follows:

### NATURE OF THE ACTION

Plaintiffs Robert Turnau, Margaret Baldwin, Chuck Lacy, Randy Kruger, Linda Kruger

and Amanda McKay bring this class action lawsuit individually and on behalf of all class

members pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301 *et seq.*,

("MMWA"), the Vermont Consumer Protection Act, 9 V.S.A. §§ 2451 *et. seq.*, and the common

law of Vermont seeking recovery of damages caused by Defendants' deceptive and defective

Downs
Rachlin
Martin PLLC

manufacturing, production, marketing, promotion and distribution of diesel-powered

Volkswagen cars manufactured from 2008 to the present and distributed in the State of Vermont.

## JURISDICTION AND VENUE

1.      This court has subject matter jurisdiction over the Plaintiffs' and the class's

claims pursuant to 28 U.S.C. § 1332 (d), as there is complete diversity of citizenship between

Plaintiffs/the class and the Defendants and the aggregate amount in controversy exceeds

$5,000,000.

2.      This court has subject matter jurisdiction over Plaintiffs' and the class's MMWA

claims pursuant to 15 U.S.C. § 2310(d-e), as the total claims at issue exceed $50,000 in value

and the class contains more than 100 members.

3.      This court has supplemental subject matter jurisdiction over Plaintiff's and the

class's state law claims pursuant to 28 U.S.C. § 1367.

4.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2), as a substantial

part of the events and/or omissions giving rise to Plaintiffs' and the class's claims occurred here.

## PARTIES

5.      Plaintiff Robert Turnau is a resident of Charlotte, Vermont.  In or about

September, 2013, Plaintiff Turnau purchased a model year 2013 Volkswagen Jetta TDI equipped

with a diesel engine.

6.      Plaintiff Margaret Baldwin is a resident of Strafford, Vermont.  In 2011, Plaintiff

Baldwin purchased a model year 2011 Volkswagen Jetta Sportswagen TDI equipped with a

diesel engine.

7.      Plaintiff Chuck Lacy is a resident of Jericho, Vermont.  In April 2014, Plaintiff

Lacy purchased a model year 2014 Jetta Sportwagen TDI equipped with a diesel engine.

Downs
Rachlin
Martin PLLC                              2

8.      Plaintiffs Randy Kruger and Linda Kruger are residents of Colchester, Vermont. Randy and Linda Kruger bought a model year 2009 Jetta Sportwagen TDI equipped with a diesel in 2009.  They also bought a model year 2015 Golf  TDI equipped with a diesel engine in or about June 2015.

9.      Plaintiff Amanda McKay is a resident of Bolton, Vermont.  In or about June 2015, Plaintiff McKay purchased a model year 2015 Jetta Sportwagen TDI equipped with a diesel engine.

10.      Defendant Volkswagen AG is the parent company of the Volkswagen Group.  It develops vehicles, components, and technologies for the Group's brands, and also produces and sells vehicles.  Volkswagen AG is based in Germany, and cars it produces are sold in the United States and in Vermont. Volkswagen AG is subject to personal jurisdiction in this Court by virtue of its purposeful direction of products, including the deceptively marketed and promoted products at issue in this lawsuit, into Vermont.

11.      Defendant Volkswagen Group is one of the leading multi-brand groups in the automotive industry.  It is based in Germany.  Volkswagen Group's business activities focus on developing, producing and selling, *inter alia,* passenger cars in the United States and other countries and in Vermont. Volkswagen Group is subject to personal jurisdiction in this Court by virtue of its purposeful direction of products, including the deceptively marketed and promoted products at issue in this lawsuit, into Vermont.

12.      Defendant Volkswagen of America is the North American operational headquarters and subsidiary of the Volkswagen Group of automobile companies of Germany. Volkswagen America is incorporated in New Jersey, is headquartered in Fairfax County, Virginia, and sells Volkswagen cars in Vermont, where it is registered to do business.

Downs
Rachlin
Martin PLLC

3

## CLASS ACTION ALLEGATIONS

13.     This action is brought pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of a class of plaintiffs ("the Class") consisting of:

a.     All persons who purchased or leased Volkswagen diesel powered cars model years 2008 to the present in the State of Vermont, including those diesel powered cars known by the model names Jetta, Jetta Sportwagen, Beetle, Beetle Convertible, Golf, Golf Sportwagen, Passat,  and Audi A3.

b.     All persons residing or domiciled in Vermont who own or lease Volkswagen diesel-powered cars model years 2008 to the present, including those diesel powered cars known by the model names Jetta, Jetta Sportwagen, Beetle, Beetle Convertible, Golf, Golf Sportwagen, Passat and Audi A3.

14.     The Class excludes Defendants, its employees, officers, directors, subsidiaries, and affiliates..

15.     The Class Period runs from 2008 to the present.

16.     Plaintiff alleges that during the Class Period, the Defendants sold cars that they represented to have clean diesel, environmentally friendly engines when in fact they knew that the engines in the cars they sold did not meet emissions standards and in fact had been engineered with an operating system designed to deceive emissions testing to meet state and federal emissions standards which the engines otherwise would not have met.

17.     Numerosity (F.R.C.P. 23(a)(1): The Class is so numerous and geographically dispersed throughout the State of Vermont that joinder of all members is impracticable except by means of a class action. Although the precise number of such individuals is currently unknown, Plaintiff believes the number of members in the Class is, at a minimum, hundreds if not

Downs
Rachlin
Martin PLLC                             4

thousands throughout the State of Vermont. The class is therefore sufficiently numerous to make joinder impracticable, if not completely impossible.

18.    Commonality (F.R.C.P. 23(a)(2):  Common questions of law and fact exist and such common questions predominate over any questions of law or fact which may affect only individual class members.  Such common questions include:

      a.    Whether Defendants engaged in the conduct alleged in this Complaint.

What marketing, information, promotion or representations were made by the Defendants pertaining to the environmentally friendly, standards-meeting or exceeding and clean diesel aspects of the Defendants' engines.

      b.    What information did the Defendants have that such representations were false or misleading.

What information Defendants failed to disclose

      c.    In what way did such representations deceive the Class.

      d.    whether such representations were made knowingly.

      e.    whether such representations were made with reckless disregard to their truth or falsity.

      f.    whether such representations were made negligently.

Whether the Defendants designed and manufactured the vehicles in question with a defeat device.

      g.    whether the true nature of the engines breached contractual obligations of the Defendants to the purchasers, including the implied covenant of good faith and fair dealing.

Whether the Defendants knew or should have known that the engines violated the Clean Air Act.

Downs
Rachlin
Martin PLLC                              5

Whether the Defendants intentionally concealed from consumers that the vehicles did not comply with federal and state emission standards.

Whether the Defendants misrepresented to consumers that the vehicles were in compliance with federal and state emission standards.

        h.      whether the actions of the Defendants caused damages to the Class.

        i.       what are the measure of damages incurred by the Class.

Whether Defendants were unjustly enriched by their actions.

Whether Plaintiff and the class members are entitled to equitable or injunctive relief, and if so, what relief.

19.    Typicality (F.R.C.P. 23(a)(3): Plaintiffs assert claims that are typical of the claims of the entire class. Plaintiffs, like all members of the class, were injured by Defendants' unlawful and deceptive conduct. The representative Plaintiff sand the members of the Class were similarly or identically harmed by the misconduct of the Defendants.

20.    Adequacy of Representation (F.R.C.P. 23(a)(4): Plaintiffs will fairly and adequately represent and protect the interests of the Class. Plaintiffs have no interest antagonistic to those of the Class and no material conflict with class members. Plaintiffs have retained counsel who are competent and experienced in complex litigation.

21. A class action is maintainable under F.R.C.P. 23(b)(1), (2) because Defendants have acted on grounds generally applicable to the class, thereby making appropriate injunctive relief or declaratory relief with respect to the class as a whole.

22.    A class action is maintainable under F.R.C.P. 23(b)(3) because questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and

efficient adjudication of this controversy.  Common questions of law and fact that relate to

Defendants' conduct predominate over any question affecting individual members of the class.

Questions common to the entire class predominate as to whether Defendants violated the

MMWA, the Vermont Consumer Protection Act and committed common law fraud, breach of

contract, negligence and unjust enrichment.  Liability will be determined on a class-wide basis

through common proof, thus common issues predominate and a class action is superior to other

methods of adjudication.

23.     Any applicable statute of limitations has been tolled by Defendants' active

concealment and denial of the facts alleged herein.  Plaintiff and proposed class members could

not have reasonably discovered the true and defective nature of the diesel engines in question

until sometime on or around September, 2015.

## GENERAL ALLEGATIONS

24.     The basis for this lawsuit is that from 2008 to the present, Volkswagen AG,

Volkswagen Group, and Volkswagen of America (collectively, "the Defendants" or

"Volkswagen") marketed and sold to class members automobiles powered with diesel engines.

During this period, Volkswagen represented these engines to be particularly clean-running,

environmentally-friendly and efficient.  The engines were represented to have low carbon,

nitrogen and other emissions, compared to gasoline engines and other diesel powered engines.

In fact Defendants had installed a defeat device in these vehicles designed to deceive emissions

testing to meet state and federal emissions standards.  When not engaged in testing, these

vehicles would exceed emissions limitations up to 40 times regulatory standards.  Instead of

being environmentally friendly, Defendants' vehicles are excessively harmful to the environment

and human health.

Downs
Rachlin
Martin PLLC                                    7

25.     The Environmental Protection Agency ("EPA") regulates emissions from motor vehicles through the Clean Air Act ("CAA"), 42 U.S.C. §§ 7401-7671q, and its implementing regulations. The CAA and the regulations promulgated thereunder aim to protect human health and the environment by reducing emissions of nitrogen oxides (NOx) and other pollutants from mobile sources of air pollution including motor vehicles.

26.     All motor vehicles must satisfy emission standards for certain air pollutants, including NOx. The EPA issues Certificates of Conformity ("COCs") to those vehicles that satisfy emission standards. The COC application must include a list of all auxiliary emission control devices installed in vehicles, including defeat devices. A defeat device is a device used to reduce the effectiveness of an emission control system during normal driving conditions, but not during testing conditions.

27.     The CAA has prohibited the use of defeat devices since at least 1972. The installation and use of defeat devices is a violation of the CAA, as is the failure to report the existence of defeat devices in COC applications.

28.     Defendants have maintained that their diesel vehicles are "clean diesel" and particularly environmentally friendly. For example, upon reentering the United States diesel automobile market in 2008, Volkswagen touted its new diesel engine as a landmark development in clean diesel. This was done at auto shows and through company promotions.

29.     Upon information and belief, from 2008 on, Defendants engaged in an extensive marketing campaign to represent their vehicles as clean diesel vehicles and much cleaner than Defendants' competitors' vehicles.

Downs
Rachlin
Martin PLLC                                          8

30.     For example, upon information and belief, Defendant's brochure for the 2013 Jetta stated that the diesel vehicle was "90% cleaner than previous diesel engines"  and the 2010 Audi A3 brochure claimed to have "the cleanest diesel technology in the world."

31.     Upon information and belief, Defendants created a website called TDI Truth & Dare that purported to demonstrate how Defendants' vehicles were cleaner than other diesel vehicles.

32.     Upon information and belief, Defendants repeatedly represented their vehicles to be compliant with federal and state emissions requirements and to be clean diesel and environmentally friendly.

33.     For example, in 2009 the COO of Volkswagen America, Mark Barnes, said that Defendants' diesel vehicle is "good for the environment because it puts out 25% less greenhouse gas emissions than what a gasoline engine would.  And thanks to the uniqueness of the TDI motor, it cuts out the particulate emissions by 90% and the emissions of nitrous oxide are cut by 95%. So a very, very clean running engine.  Clean enough to be certified in all 50 states." *Volkswagen: Our Diesel Cars Whup the Prius and Other Hybrids,* Business Insider, October 9, 2009.

34.     Despite making these representations, Volkswagen knew or should have known, that in fact, far from being particularly clean-running, environmentally friendly and efficient, the engines, on information and belief, actually produced higher level emissions than permissible in many jurisdictions and under federal standards, and included a mechanism in the engine operating system, the defeat device, that would sense when the car was being tested for emissions and then recalibrate the engine emissions and/ or readout in a manner that would meet emissions standards.

35.     Upon information and belief, the vehicles ran software that produced compliant emissions results during emission testing only.

36.     When not being tested for emissions, on information and belief, the diesel engines in such cars would emit emissions that were higher than would be emitted during the testing process, and would exceed emissions standards in many jurisdictions and under federal standards, including emissions of NOx that increased to 10 to 40 times above the EPA compliant levels.

37.     Upon information and belief, Defendants installed the defeat devices in violation of the CAA, and failed to include the defeat devices in the vehicle COC applications in further violation of the CAA.

38.     According to the EPA, Defendants knew or should have known that the defeat devices related to compliance with the CAA, the purpose of the devices was apparent from their design, and the devices were not included in the applicable COC applications.

39.     Upon information and belief West Virginia University's Center for Alternative Fuels, Engines & Emissions published results of a study commissioned by the International Council on Clean Transportation that found significantly higher in-use emissions from two of Defendants' vehicles (a 2012 Jetta and a 2013 Passat) and alerted the EPA of these results in May 2014.

40.     Upon information and belief, when confronted by the EPA and the California Air Resources Board ("CARB") Defendants asserted that the increased emissions could be attributed to technical issues and it was not until it became clear that EPA and CARB would not issue COCs for Defendants' 2016 model year diesel vehicles that Defendants finally admitted to the design and installation of a defeat device in these vehicles.

41.     Upon information and belief, at a meeting on September 3, 2015 Defendants admitted to CARB and EPA staff that its vehicles were designed and manufactured with a defeat device to bypass, defeat, or render inoperative elements of the vehicle's emission control system. This device was neither described nor justified in the certification applications submitted to EPA and CARB and therefore each vehicle was in violation of state and federal law.

42.     On September 18, 2015 the EPA issued a Notice of Violate ("NOV") to Defendants stating that Defendants violated the CAA by installing the defeat devices and failing to comply with the COCs applicable to the vehicles.

43.     On September 18, 2015 CARB issued a letter to Defendants describing Defendants' actions, notifying Defendants that CARB had initiated an enforcement investigation of Defendants, and requiring Defendants to engage in immediate corrective actions to rectify the emission non-compliance.

44.     On information and belief, and according to widely disseminated news reports, on or about September 21, 2015, Volkswagen officials publicly admitted to installing software designed to cheat emissions tests in about 11 million cars worldwide. While the cars passed emissions tests, they released nitrogen oxide up to 40 times the level allowed by federal law and a number of state emissions standards.

45.     According to national press reports, Volkswagen officials made public statements on or about September 22 or 23, 2015, acknowledging violating the trust of their customers and admitting to having made mistakes in the manufacture of their cars. "Let's be clear about this: Our company was dishonest with the EPA and the California Air Resources Board and with all of you," Volkswagen U.S. chief Michael Horn said on or about September 21, 2015. "In my German words, we have totally screwed up."

Downs
Rachlin
Martin PLLC                                  11

46.    Upon information and belief, the use of a defeat device is illegal and a threat to public health.

47.    According to the EPA upon information and belief, the release of NOx plays a major role in the atmospheric reactions with volatile organic compounds ("VOCs") that produce ozone and breathing ozone can trigger a variety of health problems including chest pain, coughing, throat irritation, and congestion. Breathing ozone can worsen bronchitis, emphysema, and asthma. Children are at greatest risk of experiencing negative health impacts from exposure to ozone.

48.    Plaintiff Robert Turnau purchased a Jetta TDI Diesel Sport Wagon, model year 2013, from a Volkswagen dealership in Barre, Vermont in or about September, 2013. He purchased the car in significant part due to the representations and marketing efforts that Volkswagen made that the car was an environmentally-friendly, clean diesel automobile, that met or exceeded all environmental emissions standards. He was influenced in buying the car by Volkswagen's representations about these features. Volkswagen charged a premium price, significantly beyond similar gasoline-powered Volkswagen models or other manufacturer's cars, due in part to these features. Plaintiff Turnau also purchased the Volkswagen due to its well-performing characteristics combined with the clean diesel engine, another attribute promoted by Volkswagen.

49.    Plaintiff Margaret Baldwin purchased a Jetta TDI Diesel Sport Wagon, model year 2011, from a Volkswagen dealership in Lebanon, New Hampshire, in 2011. She purchased the car in significant part due to the representations and marketing efforts that Volkswagen made that the car was an environmentally-friendly, clean diesel automobile, that met or exceeded all environmental emissions standards. She was influenced in buying the car by Volkswagen's

representations about these features.  Volkswagen charged a premium price, significantly beyond similar gasoline-powered Volkswagen models or other manufacturer's cars, due in part to these features.  Plaintiff Baldwin also purchased the Volkswagen due to its well-performing characteristics combined with the clean diesel engine, another attribute promoted by Volkswagen.

50.     Plaintiff Chuck Lacy purchased a Jetta TDI Diesel Sport Wagon, model year 2014, from a Volkswagen dealership in South Burlington, Vermont in or about April 2014.  He purchased the car in significant part due to the representations and marketing efforts that Volkswagen made that the car was an environmentally-friendly, clean diesel automobile, that met or exceeded all environmental emissions standards.  He was influenced in buying the car by Volkswagen's representations about these features.  Volkswagen charged a premium price, significantly beyond similar gasoline-powered Volkswagen models or other manufacturer's cars, due in part to these features.  Plaintiff Lacy also purchased the Volkswagen due to its well-performing characteristics combined with the clean diesel engine, another attribute promoted by Volkswagen.

51.     Plaintiffs Randy and Linda Kruger Turnau purchased a Jetta TDI Diesel Sportwagen, model year 2009, from a Volkswagen dealership in Vermont.  In or about June 2015, Randy and Linda Kruger also purchased a model year 2015 Golf TDI, equipped with a diesel, from a Volkswagen dealership in Hanover, Massachusetts during a time they lived in Vermont.  They purchased the cars in significant part due to the representations and marketing efforts that Volkswagen made that the car was an environmentally-friendly, clean diesel automobile, that met or exceeded all environmental emissions standards.  They were influenced in buying the cars by Volkswagen's representations about these features.  Volkswagen charged a

premium price, significantly beyond similar gasoline-powered Volkswagen models or other manufacturer's cars, due in part to these features. Plaintiffs Randy and Linda Kruger also purchased the Volkswagen cars due to its well-performing characteristics combined with the clean diesel engine, another attribute promoted by Volkswagen.

52.     Plaintiff Amanda McKay purchased a Jetta TDI Diesel Sportwagen, model year 2014, from a Volkswagen dealership in Barre, Vermont in or about June 2014. She purchased the car in significant part due to the representations and marketing efforts that Volkswagen made that the car was an environmentally-friendly, clean diesel automobile, that met or exceeded all environmental emissions standards. She was influenced in buying the car by Volkswagen's representations about these features. Volkswagen charged a premium price, significantly beyond similar gasoline-powered Volkswagen models or other manufacturer's cars, due in part to these features. Plaintiff McKay also purchased the Volkswagen due to its well-performing characteristics combined with the clean diesel engine, another attribute promoted by Volkswagen.

53.     Because of Volkswagen's actions, Plaintiffs and other class members have been damaged because they did not get the environmentally-friendly, clean diesel automobile, meeting or exceeding all environmental emissions standards, combined with outstanding performance, they had bargained for, resulting in a lower value car.

54.     Plaintiff and the Class has also been damaged because the re-sale value of their Volkswagen diesel-powered automobile has been diminished.

Downs
Rachlin
Martin PLLC                                    14

**COUNT I**

**Violation of the Vermont Consumer Protection Act ("VCPA"), 9 V.S.A. § 2451 et seq.**

55.      Plaintiffs, on behalf of themselves and the Class, reallege the foregoing as if fully set forth herein.

56.      Plaintiffs and the Class are "consumers" as defined by 9 V.S.A. § 2451a(a). Defendants are "sellers" as defined by 9 V.S.A. § 2451a(c). The diesel-powered Volkswagen cars sold by Defendants to Plaintiffs and the Class during the period in question are "goods" as defined by 9 V.S.A. § 2451a(b).

57.      Plaintiffs and the Class purchased diesel-powered Volkswagen cars from the Defendants in the Class Area (the State of Vermont) during the period in question.

58.      Plaintiffs and the Class purchased these diesel-powered Volkswagen cars from the Defendants in reliance on Defendants' representations regarding their emissions and 'clean diesel' technology.

59.      Defendants' representations regarding emissions, 'clean diesel', and the environmentally-friendly nature of the cars were knowingly false and misleading and were made with the intent to induce Plaintiffs and the Class to purchase Volkswagen diesel cars.

60.      The acts of the Defendants as set forth above, constitute deceptive and unfair business practices and acts in violation of 9 V.S.A. § 2453.  In particular, Defendants have illegally:

a.       marketed, promoted and distributed diesel-powered cars as being environmentally friendly, clean diesel and meeting or exceeding all emissions standards;

Downs
Rachlin
Martin PLLC                                15

       b.       while knowing that the cars are not environmentally friendly, clean diesel cars that meet or exceed all emissions standards but rather violated emission standards and thereby endangered both human health and the environment; and

       c.       knowing that the diesel-powered cars' operating systems included a mechanism designed to trick emissions standards testing by facilitating a false and misrepresentative readout when the cars were subjected to emissions testing.

61.      By their conduct the Defendants have engaged in deceptive business practices. As a result of these deceptive business practices, Plaintiffs and the Class have been damaged, *inter alia*, by being deprived of the benefit of their bargain with Defendants, by the loss of the use and resale value of their property, and by being made to contribute unknowingly to the degradation of the environment and the endangerment of human health.

62.      Because of Defendants' unlawful conduct, Plaintiffs and the Class are entitled to recover actual damages, restitution, attorney's fees, and exemplary damages in amounts subject to proof at trial. They are also entitled to equitable relief.

## COUNT II

### Violation of the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301 et seq.

63.      Plaintiffs, on behalf of himself and the Class, realleges the foregoing as if fully set forth herein.

64.      Plaintiffs and the Class are "consumers" as defined by 15 U.S.C. § 2301(3).

65.      Defendants are "suppliers" as defined in by 15 U.S.C. § 2301(4) and "warrantors" as defined by 15 U.S.C. § 2301(5).

66.      The diesel-powered Volkswagen cars sold by Defendants to Plaintiff and the Class during the period in question are "consumer products" as defined by 15 U.S.C. § 2301(1).

Downs
Rachlin
Martin PLLC

67.     The diesel-powered Volkswagen cars sold by Defendants to Plaintiffs and the Class during the period in question were expressly warranted to, *inter alia*, meet federal and Vermont emission standards.

68.     Pursuant to 9A V.S.A. § 2-314, the diesel-powered Volkswagen cars sold by Defendants to Plaintiff and the Class during the period in question were impliedly warranted to be merchantable.

69.     Pursuant to 9A V.S.A. § 2-315, the diesel-powered Volkswagen cars sold by Defendants to Plaintiff and the Class during the period in question were impliedly warranted to be fit for be fit for the particular purpose of combining high performance with environmentally compliant technology.

70.     Defendants breached their express warranties to Plaintiffs and the Class by, *inter alia*, selling them cars that were unable to meet federal and Vermont emission standards due to the intentional and concealed wrongdoing of Defendants.

71.     Defendants breached their implied warranties of merchantability to Plaintiffs and the Class by selling them cars that are, *inter alia*, unable to pass without objection in the trade because they grossly exceed legal emission limits and create risks to human health and the environment.

72.     Defendants breached their implied warranties of fitness for a particular purpose to Plaintiffs and the Class by selling them cars that, *inter alia*, fail to operate at and grossly exceed legal emission limits and create risks to human health and the environment when Defendants knew Plaintiffs and the Class were relying on Defendants' skill and judgment to help them select diesel automobiles that combined high performance with environmentally compliant technology.

Downs
Rachlin
Martin PLLC                            17

73.     The MMWA creates a federal right of action in Plaintiffs and the Class for Defendants' breaches of their express and implied warranties.

74.     Affording Defendants the reasonable opportunity to cure their breaches usually contemplated by the MMWA would be futile in light of Defendants' years-long and purposeful campaign of deception recited above. Defendants have been aware of these breaches, which are the result of their intentional wrongdoing, for at least several years and have taken no action to remedy them. In such circumstances, the remedies available under any informal settlement procedure would be inadequate to address the harms suffered by Plaintiffs and the Class as a result of Defendants' breaches.

75.     Because of Defendants' intentional breaches of their warranties, Plaintiffs and the Class are entitled to recover actual damages and attorney's fees in amounts subject to proof at trial.

## COUNT III

### Breach of Express Warranty

76.     Plaintiffs, on behalf of himself and the Class, realleges the foregoing as if fully set forth herein.

77.     The diesel-powered Volkswagen cars sold by Defendants to Plaintiffs and the Class during the period in question were expressly warranted to, *inter alia*, meet federal and Vermont emission standards.

78.     Defendants breached their express warranties to Plaintiffs and the Class by selling them cars that were intentionally designed not to meet federal and Vermont emission standards and which instead operated in a polluting, harmful, and unlawful manner.

Downs
Rachlin
Martin PLLC                                    18

79.     Defendants' breaches of their express warranties were knowing, intentional, and manifested a complete disregard for the promises they had made to Plaintiffs and the Class as well as for the human health and the wellbeing of the environment.

80.     Because of Defendants' intentional breaches of their warranties, Plaintiffs and the Class are entitled to recover actual and exemplary damages in amounts subject to proof at trial.

## COUNT IV

### Breach of the Implied Warranty of Merchantability, 9A V.S.A § 2-314

81.     Plaintiffs, on behalf of himself and the Class, realleges the foregoing as if fully set forth herein.

82.     Pursuant to 9A V.S.A. § 2-314, the diesel-powered Volkswagen cars sold by Defendants to Plaintiffs and the Class during the period in question were impliedly warranted to be merchantable.

83.     Defendants breached their implied warranties of merchantability to Plaintiffs and the Class by selling them cars that are, *inter alia*, unable to pass without objection in the trade because they grossly exceed legal emission limits and create risks to human health and the environment.

84.     Defendants' breaches of their implied warranties were knowing, intentional, and manifested a complete disregard for the promises they had made to Plaintiffs and the Class as well as for the human health and the wellbeing of the environment.

85.     Because of Defendants' intentional breaches of their warranties, Plaintiffs and the Class are entitled to recover actual and exemplary damages in amounts subject to proof at trial.

## COUNT V

### Breach of the Implied Warranty of Fitness for a Particular Purpose, 9A V.S.A § 2-315

86.     Plaintiffs, on behalf of himself and the Class, realleges the foregoing as if fully set forth herein.

87.     Pursuant to 9A V.S.A. § 2-315, the diesel-powered Volkswagen cars sold by Defendants to Plaintiffs and the Class during the period in question were impliedly warranted to be fit for the particular purpose of combining high performance with environmentally compliant technology.

88.     Defendants knew Plaintiffs and the Class were relying on Defendants' skill and judgment to help them select diesel automobiles that combined high performance with environmentally compliant technology.

89.     Defendants breached their implied warranties of fitness for a particular purpose to Plaintiffs and the Class by selling them cars that, *inter alia*, fail to operate at and grossly exceed legal emission limits and create risks to human health and the environment when Defendants knew Plaintiffs and the Class were relying on Defendants' skill and judgment to help them select diesel automobiles that combined high performance with environmentally compliant technology.

90.     Defendants' breaches of their implied warranties were knowing, intentional, and manifested a complete disregard for the trust Plaintiffs and the Class had placed in their skill and judgement to help them select and purchase diesel automobiles that combined high performance with environmentally compliant technology.

91.     Because of Defendants' intentional breaches of their warranties, Plaintiffs and the Class are entitled to recover actual and exemplary damages in amounts subject to proof at trial.

## COUNT VI

### Common Law Fraud

92.     Plaintiffs, on behalf of themselves and the Class, reallege the foregoing as if fully set forth herein.

93.     By representing that its diesel-powered cars were economically friendly, clean diesel and met or exceeded all environmental standards, while knowing they were not, and while devising a mechanism to fraudulently defeat emissions testing, Defendants made false statements of fact that were intended to induce Plaintiffs and the Class members to purchase Volkswagen diesel automobiles.

94.     Defendants' false statements of fact were material to Plaintiffs' and the Class's decision to purchase their Volkswagen diesel automobiles.

95.     Plaintiffs and the Class relied on Defendants' false statements of fact in deciding to purchase Volkswagen diesel automobiles, and were justified in doing so based on the fact Defendants had designed the automobiles and their constituent technologies.

96.     Plaintiffs and the Class had no way of knowing the falseness of Defendants' statements at the time they purchased their Volkswagen diesel automobiles.

97.     Defendants defrauded Plaintiffs and the Class.

98.     Because of Defendants' unlawful conduct, Plaintiffs and the Class are entitled to recover actual and exemplary damages in amounts subject to proof at trial.

## COUNT VII

### Breach of Contract including the Covenant of Good Faith and Fair Dealing

99.     Plaintiffs, on behalf of themselves and the Class, reallege and incorporate as though fully set forth herein each and every allegation contained above, and further allege as follows, against all Defendants:

100.     The Plaintiffs and the Class Members entered into an agreement to purchase a Volkswagen diesel-powered car from the Defendants.  The agreement required Plaintiffs and the Class to pay a particular price for the car.  The Defendant agreed to provide the Plaintiffs and the Class a particular type of car with particular features, including a clean diesel engine of the type represented by the Defendants.

101.     By selling the Plaintiffs and the Class cars that did not accurately reflect the features of the cars which the Plaintiffs and the Class agreed to purchase, the Defendants breached their purchase agreements with the Plaintiffs and the Class, including the implied covenant of good faith and fair dealing.

102.     By breaching their purchase agreements, the Defendants have caused the Plaintiffs and the Class to suffer damages, and the Plaintiffs and the Class are entitled to actual damages, restitution, attorney's fees and punitive damages.

## COUNT VIII

### Common Law Negligence

103.     Plaintiffs, on behalf of themselves and the Class, reallege and incorporate as though fully set forth herein each and every allegation contained above, and further alleges as follows, against all Defendants:

104.     The Defendants, by installing a device that has the effect of defeating or effecting emissions testing and readouts, acted knowingly, recklessly or negligently, and in doing so, have significantly diminished the value of the diesel-powered cars in a way that has harmed purchasers and owners of those cars.

105.     By installing such devices in cars, the Defendants have not acted with the care a reasonable manufacturer of a car should exercise.

106.     Plaintiffs and the Class have suffered damages as a result of the Defendants' negligence and the Plaintiffs and the Class are entitled to actual damages, restitution, attorney's fees and punitive damages.

## COUNT V

### Unjust Enrichment

107.     Plaintiffs, on behalf of themselves and the Class, reallege and incorporate as though fully set forth herein each and every allegation contained above, and further alleges as follows, against all Defendants:

108.     By engaging in the acts described above, the Defendants have been unjustly enriched at the expense of the Plaintiffs and the Class.

109.     It would be unjust and inequitable to allow Defendants to retain the benefits conferred on them by Plaintiffs and the Class in light of the deception and dishonesty manifested by Defendants in the context of their commercial interactions with Plaintiffs and the Class.

110.     Accordingly, the Plaintiffs and the Class are entitled to actual damages, restitution, attorney's fees and punitive damages.

WHEREFORE, Plaintiffs and the Class respectfully request that the Court:

Downs
Rachlin
Martin PLLC

A.      Adjudge and decree that Plaintiffs are fair and adequate representatives of the

Class as defined above;

B.      Determine that this action be maintained as a class action pursuant to 9 V.S.A. §

2451 et seq. and Rule 23 of the Federal Rules of Civil Procedure and the other statutes and law

cited herein and direct reasonable notice be given to members of the Class;

C.      Appoint the undersigned as Class Counsel.

Enter judgment for Plaintiffs and the Class and award restitution, compensatory damages,

interest and costs, as well as equitable relief;

D.      Award treble damages;

E.      Award reasonable attorney's fees and the costs of suit, including expert's fees, as

allowed by law; and,

F.      Grant such further relief as the Court deems just and equitable.

## JURY TRIAL DEMAND

Plaintiffs, on behalf of themselves and all others similarly situated, hereby demand a trial

by jury on all claims and issues so triable as a matter of right.

Burlington, Vermont.                            October 2, 2015

                                                DOWNS RACHLIN MARTIN PLLC

                                                By: _____
                                                    Tristram J. Coffin
                                                    199 Main Street
                                                    P.O. Box 190
                                                    Burlington, VT 05402-0190
                                                    Telephone: 802-863-2375
                                                    Fax: 802-862-7512